UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE

NICOLA MARIE DUGGER )
)
V. ) NO. 2:16-CV-34
)
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security )

REPORT AND RECOMMENDATION

This matter is before the United States Magistrate Judge, under the standing orders of the Court and 28 U.S.C. § 636 for a report and recommendation. The plaintiff's application for disability insurance benefits under the Social Security Act was administratively denied following a hearing before an Administrative Law Judge ["ALJ"]. This is an action for judicial review of that adverse ruling. The plaintiff has filed a Motion for Judgment on the Pleadings [Doc. 14], and the defendant Commissioner has filed a Motion for Summary Judgment [Doc. 19].

**I. Standard of Review**

The sole function of this Court in making this review is to determine whether the findings of the Commissioner are supported by substantial evidence in the record. *McCormick v. Secretary of Health and Human Services,* 861 F.2d 998, 1001 (6th Cir. 1988). "Substantial evidence" is defined as evidence that a reasonable mind might accept as adequate to support the challenged conclusion. *Richardson v. Perales*, 402 U.S. 389 (1971). It must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn is one of fact for the jury. *Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966). The Court may not try the case *de novo* nor resolve conflicts in the evidence, nor decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Even if the reviewing court were to resolve the factual issues differently, the Commissioner's decision must

stand if supported by substantial evidence. *Liestenbee v. Secretary of Health and Human Services,* 846 F.2d 345, 349 (6th Cir. 1988). Yet, even if supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2007).

The plaintiff's date last insured ["DLI"] was December 31, 2013. In order to be entitled to disability insurance benefits, plaintiff must establish that she was disabled on or prior to that date. At all applicable times the plaintiff was a younger individual with a high school education. There is no dispute that she cannot perform any past relevant work.

**II.     Sequential Evaluation Process**

The applicable administrative regulations require the Commissioner to utilize a five-step sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, see *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

> 1. Is the claimant engaged in substantial gainful activity?
>
> 2. Does the claimant suffer from one or more severe impairments?
>
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?
>
> 4. Considering the claimant's RFC, can he or she perform his or her past relevant work?
>
> 5. Assuming the claimant can no longer perform his or her past relevant work — and also considering the claimant's age, education, past work experience, and RFC — do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4). A claimant bears the ultimate burden of establishing disability under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997). However, "[t]he burden shifts to the Commissioner at [the] fifth step to establish the claimant's ability to do other work." *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001), (citations omitted). The ALJ in this case found that the plaintiff was capable of performing a significant number of jobs in the national and state economies (Tr. 29-30). Accordingly, he found that she was not disabled at the final step of the sequential evaluation process.

### III. Evidence in the Record

The plaintiff's medical evidence is summarized in her brief as follows:

> As early as 11/5/1999, the claimant was diagnosed with severe degenerative disk disease. At the time she was seen by an orthopedic, Dr. Richard Duncan whom reported she had back pain and right leg pain that had been going on for several months. She also reported having nondermatomal numbness in the hands and feet that was sporadic. (TR 483) MRI revealed degenerative disk disease with a disk bulge at L4-5 and L5-S1 with no stenosis or herniated disk seen. He felt there was no surgical intervention required at the time. (TR 484).
> The claimant first began seeing Dr. Aubrey McElroy on May 24, 2011 wherein she complained of pain in her back at a 2/10 level. Physical examination revealed trigger point in right trapezius body, several trigger points in low back, and left iliac creast elevated 2 inches above the right with loss of lordosis. His physical findings included normal neurologic exam, reflexes normal, sensory and motor exams intact, gait normal. (TR 360) He continued to prescribe suboxone to the claimant for prior narcotic addiction and for pain. He treated her for the same symptoms of low back pain on 6/22/2011 and 7/22/2011. (TR 363, 366) On 8/19/2011 she reported having worsening sciatic symptoms. 2 Physical exam reported trigger point in right trap body, several trigger points in low back, left iliac creast level with the right, loss of lordosis, paraspinous muscles with increased tone and left Piriformis pressure recreating the left sciatic symptoms. (TR 369) She continued to complain of sciatic pain for her visits on 9/16/2011, 10/14/2011, 1/11/11, 12/9/2011. (TR 372, 375, 382, 385, 386) Dugger returned for follow-up treatment on 2/3/2012 for pain in her right ankle with physical findings continuing to indicate sciatic pain with objective testing revealing tenderness in the SI joint. (TR 394) He reported the Suboxone was helping with the pain. He suggested SI exercises and that HVLA applied to left leg had good results. (TR 395) The claimant continued to receive treatment for sciatica and

3

chronic pain with similar physical findings on each exam of 3/2/2012, 4/2/2012, 5/29/2012, 6/26/2012, 8/24/2012 and 9/21/2012. (TR 399, 402, 413, 419, 425) An MRI report of 10/23/2012 continued to reveal degenerative disk disease most notably at L5-S1 where broad based osteophyte and disc bulging is noted. (TR 589) X-rays showed degenerative disc and facet disease with disc space narrowing at L4-L5 and L5-S1. (TR 591).

Claimant returned to Dr. McElroy on 12/28/2012 with continued sciatic pain. (TR 459). On 1/21/2013 she returned and Dr. McElroy reported her sciatica in both legs with right greater than the left getting worse with sitting or laying in one position for a long time, but with improvement when she gets up and moving. (TR 464) His physical exam states that Piriformis pressure reproduces the sciatic pain 100%. (TR 464) He taught the claimant how to sit and sleep and listed Piriformis Syndrome as a diagnosis. On 2/18/2013 the claimant reported some sciatic improvement with a steroid injection. Piriformis pressure reproduced some of the sciatic pain. (TR 467) At this visit she reported having carpal tunnel issues being bad in both hands. She complained of dropping things and having trouble feeling paper money. (TR 468) She continued to be treated for these symptoms on 3/19/2013. (TR 515) The sciatic pain was reported as worsening on 5/14/2013, 6/12/2013 and 7/10/2013. (TR 515, 518, 525) On 8/7/2013 Dr. McElroy prescribed a donut to be used to sit on to assist in relieving her back pain. (TR 528, 529).

On 9/6/2013 Mrs. Dugger reported experiencing significant tailbone pain after she fell on her "butt bone" trying to sit in the yard. Physical exam revealed tailbone was very tender but no displacement. He gave a diagnosis of coccyx pain and recommended her using the donut 100% of the time. (TR 532) Dugger continued to report increasing tailbone pain on her visits of 10/4/2013, 11/4/2013, 12/3/2013, 1/3/2014, 2/28/2014 and 4/8/2014. (TR 538, 542, 546, 550, 571, 577).

Dr. McElroy filled out a Medical Statement on 6/29/2014 listing the following as physical restrictions of the claimant: stand/walk at least 2 hours but less than 6 hours in an 8 hour workday; sit at least 2 hours but less than 6 hours in an 8 hour workday all due to patient having coccyx pain that increases when sitting very long and Piriformis Syndrome requiring her to change positions frequently. He further opined the claimant would need to take periodic breaks of up to 10 minutes an hour as needed and lie down up to 1 hour a day as needed. He felt she could lift up to 10lbs and no more than 10 lbs. occasionally. (TR 626) Due to neuropathy and lack of sensitivity in her hands and forearms she was limited in both her dominant and non-dominant hands in fine manipulative movements of fingering. (TR 627) He opined she would fatigue with repetitive use. She could occasionally use foot controls. (TR 627).

A consultative exam was performed on 1/7/2013. The report documented the claimant's complaint of low pack pain, bilateral hand and wrist pain with bilateral repair in 2001, history of gastric bypass since 2/2009 and depression. Physical exam revealed hypertrophy of the first MCPJ and hand ROM was normal bilaterally except angled 5th digits on both hands 15 degrees forward. (TR

4

445) She had positive straight leg raise on the left and right with flexion of 75 degrees and extension 15 degrees. (TR 446) He indicated the claimant could lift up to 40 lbs ½ of an 8 hour work day and could sit/stand/walk 7 hours out of an 8 hour work day. (TR 446) Having failed to due a neurological exam on her hands and wrist, she was called back for a follow-up on 1/30/2013. The exam revealed positive bilaterally Phalen's exam and decreased grip at 4/5 bilaterally. 4 Her sensations were absent on both forearms and hands. (TR 451).

A state agency physician reviewed the assessment and other medical records through 3/14/2013 and opined the claimant could lift at a light level being 20 lbs. 1/3rd of the day and 10 lbs. frequently. (TR 87) He further opined she could stand/walk 6 hours out of an 8 hour day and sit 6 hours out of an 8 hour day. Pushing and pulling unlimited. (TR 87) She could frequently (2/3rds of an 8 hour workday) engage in handling and fingering. He placed no limits on her ability to feel. (TR 88) He did not review any records after 3/19/2013 and had no knowledge of the claimant's coccyx injury which was first reported by the claimant on 9/6/2013. (TR 89).

[Doc. 15, pgs 3-7].

The ALJ conducted a hearing on September 11, 2014. Plaintiff testified that she was in a car wreck in 2000 that left her with a "chipped ankle" and a neck injury which keeps her from turning her head fully to the right. She also stated that an MRI taken at the time of the wreck showed herniated discs in her back (Tr. 44-45). She stated that the pain in her back causes a numbing down her legs and stabbing pain which "hurts all the time." (Tr. 45). She stated her doctor advised her to change positions from sitting to standing or vice versa for 10 minutes every hour (Tr. 46). She said that she has a constant numbness in her toes that causes frequent stumbling and falling (Tr. 46). She stated that she has trouble with her hands, and said they became numb about eight months after her carpal tunnel surgery several years earlier. Because of this, she said she has difficulty lifting. She stated she could not lift a gallon of milk with only one hand (Tr. 48). She said she cannot feel with her fingers, and if she tries to do things with them she has pain that shoots up her wrist into her elbow. She also stated that this causes her to drop things (Tr. 49). Plaintiff also testified that her daughter comes over to help her care for

5

herself in some respects and to care for her cat.

At the hearing, the ALJ took the testimony of Ms. Donna Bardsley, a Vocational Expert ["VE"]. After establishing the requirements of plaintiff's past relevant work, the ALJ asked her a series of questions. He asked her to assume a person of plaintiff's age, education and past work experience, who "has the exertional limitations as set forth in Exhibit 6A at page 10, which is a disability determination explanation completed by an agency physician." (Tr. 55).[1]

Ms. Bardsley identified thousands of jobs in the region and hundreds of thousands of jobs in the national economy which such a person could perform (Tr. 55-56). If limited to the extent set forth in Dr. McElroy's assessment, or to the extent plaintiff described in her testimony, there would be no jobs which she could perform (Tr. 56-57).

## IV. ALJ's Findings

On October 7, 2014, the ALJ filed his hearing decision. He made the following findings of fact and conclusions of law:

1. The plaintiff last met the insured status requirements of the Social Security Act on December 31, 2013 (Tr. 21).

2. The plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of February 25, 2009 through her date last insured ["DLI"] of December 31, 2013 (Tr. 21).

3. Through the DLI, she had a severe combination of impairments, consisting of degenerative disc disease, carpal tunnel syndrome, and a gastrointestinal disorder (Tr. 21).

---

[1] Exhibit 6A set forth plaintiff's RFC as occasionally lift and/or carry 20 lbs, frequently lift and/or carry 10 lbs, stand and/or walk about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday. (Tr. at 91).

6

4. Through the DLI, the plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (Tr. 23).

5. Through her DIL, the plaintiff had the residual functional capacity ["RFC"] "based on the limitations set forth in Exhibit 6A at page 10." He noted that with those limitations she could "occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and /or walk (with normal breaks) for a total of about six hours in an eight hour workday; sit (with normal breaks) for a total of about six hours in an eight hour workday; frequently climb ramps and stairs, balance, kneel, crouch, and crawl; occasionally climb ladders, ropes or scaffolds and stoop; and frequently handle with the bilateral upper extremities." (Tr. 23). In arriving at this decision, the ALJ found that the plaintiff was not entirely credible regarding her statements as to pain and the other limiting effects of her impairments. He gave great weight to the State Agency physicians, and little weight to the medical assessments of Dr. Purswani and the treating physician Dr. McElroy (Tr. 23-28).

6. Through the DLI, plaintiff could not perform any past relevant work because of the "continuous keyboarding" that work required (Tr. 28).

7. The plaintiff was a younger individual on her DLI (Tr. 28).

8. The plaintiff has a high school education (Tr. 29).

9. Transferability of skills was not an issue (Tr. 29).

10. Through the DLI, there were a significant number of jobs in the national economy which the plaintiff could have performed (Tr. 29).

11. The plaintiff was not under a disability at any time between her alleged onset date

of February 25, 2009 and her DLI of December 31, 2013 (Tr. 30).

**V.    Analysis**

Plaintiff asserts that "[t]he ALJ failed to give proper weight to the treating physician's opinion of Dr. Aubrey D. McElroy who had treated the claimant for over three years. There is not substantial evidence to support the denial of benefits to the claimant." [Do. 15, pg. 9].

The "treating physician rule" as set out in 20 C.F.R. § 404.1527(c) is one of the bedrock principles of Social Security law, discussed in numerous Sixth Circuit cases. For example, "[i]t has long been the law that substantial deference—and, if the opinion is uncontradicted, complete deference—must be given to such opinions and diagnoses." *King v. Heckler*, 742 F.2d 968, 973, citing *Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1054 (6th Cir.1983); *Bowie v. Harris*, 679 F.2d 654, 656 (6th Cir.1982); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir.1980).

Plaintiff asserts that the ALJ did not give proper weight to Dr. McElroy, who was her treating physician from May 25, 2011 through her DLI and beyond. In fact, Dr. McElroy personally examined and treated the plaintiff on a monthly basis, with well over 20 visits between May 25, 2011 and her DLI of December 31, 2013. Plaintiff also asserts that the ALJ did not properly discuss his reasons for the weight given to Dr. McElroy's medical opinions in his role as a long-term treating source, thus running afoul of *Blakley v. Commissioner of Soc. Sec.*, 581 F.3d 399 (6th Cir. 2009), *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011), and the defendant's regulations requiring an explanation of the reasons for not crediting such treating sources.

In the recent case of *Cole*, *supra*, the Sixth Circuit went into great detail about how ALJ's

8

must evaluate testimony of a treating physician, such as Dr. McElroy. In this regard, the Court stated:

> [T]he Commissioner has mandated that the ALJ ''will'' give a treating source's opinion controlling weight if it ''is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record.'' 20 C.F.R. § 404.1527(d)(2). If the ALJ declines to give a treating source's opinion controlling weight, he must then balance the following factors to determine what weight to give it: ''the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and specialization of the treating source.'' *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir.2004) (citing 20 C.F.R. § 404.1527(d)(2)).
>
> Importantly, the Commissioner imposes on its decision makers a clear duty to ''always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion.'' 20 C.F.R. § 404.1527(d)(2). Those good reasons must be ''supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'' Soc. Sec. Rul. No. 96–2p, 1996 SSR LEXIS 9, at *12 (Soc. Sec. Admin. July 2, 1996). This requirement is not simply a formality; it is to safeguard the claimant's procedural rights. It is intended ''to let claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that he is not.'' *Wilson,* 378 F.3d at 544.

*Id.* at 937.

It is thus not enough for the ALJ to have substantial evidence supporting his or her decision to justify giving little or no weight to a treating source. The Commissioner's regulations give the claimant a "procedural right" to understand from reading the hearing decision why their doctor's opinion was not enough for them to be found to be disabled.

The depth and clarity of the ALJ's analysis of a treating medical source's opinion is also deemed essential to the judicial review process. "Those good reasons for not giving great weight

9

to a treating source must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Blakley v. Commissioner of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009) quoting Soc. Sec. Rul 96-2p, 1996 WL 374188, at *5. *Blakley* also states:

> We have held that an ALJ's 'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given "*denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.*'

*Id.* citing *Rogers v. Commissioner of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007) (emphasis added).

*Blakley* also points out that "[A] finding that a treating source medical opinion...is inconsistent with other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected...Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." *Id.* at 408. Those factors, set forth in 20 C.F.R. § 404.1527(c)(2), include the length of the treatment relation, the "supportability" of the opinion, the consistency of the opinion with the rest of the record, and any specialization of the treating source. The failure of the ALJ "to give good reasons for according less than controlling weight to treating sources" is not harmless error where the reviewing court cannot "engage in meaningful review of the ALJ's decision." *Id.* at 409 (internal citations omitted.)

The regulations require the ALJ have substantial evidence for not giving a treating source controlling weight, that the ALJ explain in the hearing decision with "sufficient specificity" the

10

reasons for the weight given and must still weigh the treating source's opinion even if it is not given controlling weight. If meaningful review is stymied, this failure cannot be harmless error.

All of the requirements of *Blakley*, *Cole*, and other cases are not new law. Each and every one of these requirements is set forth in the Commissioner's regulations and rulings. The cases are a judicial reemphasis of the importance of these regulations, both to a reviewing court and to the overall credibility of the administrative adjudicative process.

As an initial observation, there is other substantial medical evidence in the record which is "inconsistent" with the restrictions contained in Dr. McElroy's June 29, 2014 medical assessment (Tr. 626-629). Undoubtedly, the State Agency physicians and Dr. Purswani both found the plaintiff had less severe restrictions than those opined by Dr. McElroy. The question becomes whether the ALJ adequately discussed the reason for giving Dr. McElroy's opinion little weight in light of the factors set out in § 404.1527(c)(2)(i) and (ii). The length of the treatment relationship certainly militates in favor of Dr. McElroy, as does the frequency of visits. Also, the overriding theme of the visits was back pain and worsening symptoms of sciatica causing pain and numbness in the legs. With respect to the issue of specialization, Dr. McElroy apparently maintains a general family practice. However, it appears to the Court that neither Dr. Purswani nor the State Agency physicians are specialists either. With respect to these factors, there is nothing to detract from the weight to be given to Dr. McElroy's assessment. The other two factors mentioned in the regulation and the cases are supportability and consistency with the record as a whole. These are at the heart of this case. It is with respect to these two areas that the ALJ must give an explanation as to why he gave Dr. McElroy little weight.

The ALJ discusses the factors he used to determine the plaintiff's limitations and the

11

supportability/consistency of Dr. McElroy's assessment in two places.  Discussing his finding that the plaintiff was not completely credible, he mentioned that an MRI of the lumbar spine showed degenerative changes and a disc bulge, but no stenosis or herniated disc.  He stated that "physical examinations did not indicate any ongoing or significant abnormalities."  (Tr. 24).  The ALJ pointed out that there was no record of specialist evaluation or treatment, no emergency room treatment or hospitalization for plaintiff's musculoskeletal impairment, no surgery, and that even though she had pain "the evidence shows that she is able to stand, move about, and use her arms, hands and legs in a satisfactory manner."  (Tr. 24).  Discussing her carpal tunnel syndrome, the ALJ acknowledged that Dr. McElroy had diagnosed that condition, but that no nerve conduction studies were done to confirm the diagnosis.  Also, he again mentioned no referral to a specialist.  Therefore, he again found the plaintiff not credible (Tr. 25).

He also discussed and evaluated Dr. McElroy's findings when he announced the weight he was giving to the medical sources.  He stated that Dr. McElroy's findings were given little weight because they were "not consistent with the medical evidence at issue for the period at issue."  (Tr. 27).  He went on to state "[t]here is no record of specialist evaluation or treatment for degenerative disc disease.  There is no evidence of emergency department treatment or hospitalization for the claimant's musculoskeletal impairment.  The claimant has not had surgery.  Although the claimant experiences pain, the evidence shows that she is able to stand, move about, and use her arms, hands, and legs in a satisfactory manner.  The record does not reflect any EMG/nerve conduction studies which confirm a diagnosis of carpal tunnel syndrome.  There is no evidence of specialist intervention or treatment during the period at issue.  The medical evidence does not establish any disabling limitations of function in relation to the

12

claimant's carpal tunnel syndrome." (Tr. 27).

For the most part, the ALJ thus offered only vague, generalized statements as to why he gave Dr. McElroy little weight. The Commissioner's brief does an excellent job of pointing to evidence in the record which would support the ALJ's rejection of McElroy's testimony. These include evidence that the plaintiff was actually working some of the time, including evidence in some of Dr. McElroy's own treatment notes [Doc. 20, p. 13]. However, as pointed out by *Cole, supra*, at 937, "[t]he Commissioner imposes this duty (to state such reasons) on its decision makers…," and not upon counsel for the government. This is a procedural right of the plaintiff and a necessity for proper review by this Court for the adjudicator *himself* to state sufficiently specific reasons for the weight given to a treating source. *Blakley*, *supra*, at 407.

The Court also sees difficulties with the ALJ's primary reliance on the State Agency physicians to supply the RFC. First, the State Agency opinion on which the ALJ relied primarily (Tr 88-90), was generated on May 3, 2013. All records they examined in reaching their opinion were generated prior to that date. Visits after that date and prior to her DLI showed that the plaintiff suffered continuing, worsening pain from her lower back. Also, on September 6, 2013, the plaintiff told Dr. McElroy that she had suffered an injury to her tailbone. His exam confirmed that and resulted in him recommending using a donut to sit on all the time. Also, the State Agency did not have Dr. McElroy's assessment to review. A similar circumstance was noted by the Sixth Circuit in *Blakley*, *supra*. The Court stated:

> Here, however, the Agency's non-examining sources offered their opinions, upon which the ALJ relied, on June 30, 2005, and September 21, 2005. Consequently, those non-examining sources did not have the opportunity to review, at a minimum, Dr. Kibler's October 2005 assessment, Dr. Kibler's December 2005 restrictions, Dr. Muffly's June 2006 review, and Dr. Raza's psychiatric treatment records. And because much of the over 300 pages of medical evidence reflects

13

> ongoing treatment and notes by Blakley's treating sources, 'we require some indication that the ALJ at least considered these facts before giving greater weight to an opinion that is not based on a review of a complete record.' *Fisk v. Astrue*, 253 Fed. Appx. 580, 585 (6th Cir. 2007).

*Blakley, supra*, at 409. There is no indication that the ALJ took into account the fact that the State Agency opinion from which he extracted his RFC word for word had not had an opportunity to review those records and the assessment.

From the foregoing analysis, it should be obvious that the Court does not feel that the record is sufficient to order a remand for an award of benefits. However, the Court finds that the Commissioner's decision was not substantially justified, and that the case should be remanded for a more appropriate explanation in accordance with the cases cited above as to why the ALJ gave the treating physician in this case little weight.

Therefore, it is recommended that the plaintiff's Motion for Judgment on the Pleadings [Doc. 14] be GRANTED insofar as it requests a remand, and that the defendant Commissioner's Motion for Summary Judgment [Doc. 19] be respectfully DENIED.[1]

>                     Respectfully submitted,
>
>                     Clifton L. Corker
>                     UNITED STATES MAGISTRATE JUDGE

---

[1] Any objections to this report and recommendation must be filed within fourteen (l4) days of its service or further appeal will be waived. 28 U.S.C. 636(b)(1).